LAND, J.
This is a suit to contest a primary election brought under Act No. 198 of 1912 by the plaintiff, claiming to have been nominated for the office of district attorney for the Twenty-Eighth judicial district, composed of the parishes of Jefferson, St. Charles, and St. John. The contestant alleged that he received 1,076 votes', against 1,027 votes cast for the defendant, but that the judicial committee of the district, by ignoring the election and returns from the parish of Jefferson and three wards of the parish of St. Charles, figured out a majority in favor of the defendant, and returned him as the Democratic nominee for said office. This action of the committee is the only irregularity or illegality complained of by the plaintiff in reference to the primary election. Plaintiff says:
“I was elected by 49 majority as shown by the returns, and the committee wrongfully counted me out by refusing to consider the returns from the parish of Jefferson and three wards of the parish of St. Charles.”
[1] Defendant replies that the committee was not bound to consider returns not mailed to their chairman according to law, and, in the alternative, that a majority of the legal votes was cast in favor of the defendant.
In the recent case of Andrews v. Blackman, 59 South. 769,[1] this court affirmed the power and duty of a judicial committee to examine returns which had been forwarded to the clerk of court in sealed ballot boxes. The very purpose of the lawmaker in providing for duplicate and triplicate returns of elections is to guard against their loss, or misdirection, or possible fraudulent alteration or suppression. To permit the tabulation of partial returns of elections would lead to the practical disfranchisement of voters, and in many instances to the defeat of the popular will. Hence every returning committee or officer should, in case of missing returns, resort to such other of the triplicate returns as may be available.
*375 [2] In this contest the court must necessarily decide the issue of nomination vel non tendered by the plaintiff. On this issue, we are of opinion that the ballots are the best evidence of the result of the election, and that the judge below erred in refusing the request of the defendant that the ballots themselves be counted.
[3] This cause was argued yesterday, and under the statute must be decided to-day. We have given the case our best attention, but have not had time to formulate an opinion on. the many exceptions and objections presented by the record. We think that the exceptions filed by the defendant were properly overruled. Judge Skinner was properly appointed to try the case, vice Judge Edrington, recused. The remedy provided by the statute is of the most summary character, and to be effective must necessarily be pursued in chambers, when the courts are in vacation. Even the Supreme Court is directed to meet in vacation, and hear causes of this nature, and decide them within 24 hours. As to the objections to /evidence attacking collaterally the registration of particular voters, we think that they were properly sustained as to qualifications necessary for registration.
[4] We are further of opinion that under the primary statutes of this state a candidate does not lose his right to object to illegal votes, because he did not challenge the voters at the polls. Hence the defendant should be permitted to prove, if he can, that the voters named in his answer were not entitled to vote, because they had not paid their poll tax, or were nonresidents, or were not registered.
[5] The election in question was held and the returns made under the primary law of 1912. Defendant claims to have been nominated at the election, and his attack on the constitutionality of the statute seems to be restricted to the section relating to contests in the courts over nominations. The title of the act discloses the purpose to amend and re-enact the primary law of 1900, and is sufficient. Both acts confer jurisdiction in the courts to try and determine contests for party nominations. The contention that the exercise of such jurisdiction is merely the discharge of a political function is without force. A Democratic primary nomination in this state has for years been equivalent to an election, and is, therefore, a valuable asset in the hands of the candidate who has been fortunate enough to secure it. This fierce and protracted litigation over the nomination in question shows that the contestants consider the legal right in dispute to be of money value exceeding $2,000. The ease presented has, therefore, all the elements of a contest for office, and the Legislature had the power to vest in the courts authority to hear and determine such cases. The defendant has been cited and heard, and has no room to complain of the denial of due process of law.
It is therefore ordered that the judgment below be reversed, and that this cause be remanded for further proceedings according to law and the views expressed in the foregoing opinion. Costs of appeal to be paid by the plaintiff and appellee.
His honor, the CHIEF JUSTICE, concurs in the decree to the extent that the ease is remanded for further proceedings
His honor, Mr. Justice SUMMERVILLE, concurs in the decree.
His honor, Mr. Justice PROVOSTY, concurs in the decree, but cannot agree with the proposition that, in any contested election suit, the registration of a voter by the.registrar of voters is conclusive of his qualifications to vote, in such way that a vote cannot be cast out, though the person who voted *377 it waj? a minor, or nonresident, or foreigner, or otherwise disqualified, if he was registered.

Ante, p. 355.